**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARK NEWTON AND ANDREA NEWTON, <br><br> Plaintiffs, <br><br> v. <br><br> TOWNSHIP OF UNION, *et al.*, <br><br> Defendants. | Civil Action No.: 15-6228 (JLL) <br><br> **OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of a motion to dismiss Plaintiffs' complaint by Defendants ("Defs.' Mot.") pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion is unopposed, and no oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure. After considering Defendants' submission, the Court grants Defendants' motion to dismiss in part and denies it in part.

## I. BACKGROUND

Plaintiffs, acting *pro se*, bring various claims for alleged civil rights violations pursuant to 42 U.S.C. § 1983 arising out of events related to their arrests on shoplifting and other charges on August 16, 2013. Because the events and related claims vary to some degree for each plaintiff, the Court will address each separately.[1] Together, Plaintiffs assert twenty-one (21) claims against Defendants. Because of Plaintiffs' *pro se*

---

[1] The Court accepts the allegations as pled by Plaintiffs in the complaint as true for purposes of this motion.

status, the Court construes the complaint liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotations and citations omitted); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (quoting *Erickson*).

<u>Mark Newton</u>

Mr. Newton alleges that, on August 16, 2013, he was shopping with Ms. Newton and their daughter at a Walmart store in Union, New Jersey. (Compl., Count 1, ¶ 1.) At some point, Mr. Newton returned to his vehicle and was reading when Defendant Sergeant Wittevrongle "suddenly appeared out of no where in the Walmart parking lot, and stopped his police cruiser a short distance in front of the vehicle operated by [him]." (*Id.*, Count 1, ¶ 2.)

The officer yelled for Mr. Newton to exit his vehicle, whereupon Mr. Newton began recording the interaction on his cellular telephone. (*Id.*, Count 1, ¶ 3.) Mr. Newton then exited the vehicle, and "in the absence of any reason whatsoever, the Sergeant forcibly grabbed the Plaintiff's arm, and began twisting it." (*Id.*) At this point Defendant Officers Santos and Devlin "grabb[ed] the Plaintiff with great force throwing the Plaintiff against his motor vehicle," and "Officer Devlin leaned on Plaintiff's legs, while Officer Santos pressed heavily on the Plaintiff's back, where Sergeant Wittevrongle handcuffed [him], and immediately placed him in the rear of the patrol car." (*Id.*, Count 1, ¶¶ 3-4.) Mr. Newton asserts that the officers "deliberately placed handcuffs on the Plaintiff in an intentionally harsh manner, and Plaintiff was compelled to sit on his hands, and wrists while seated in Defendants' patrol vehicle for over forty-

five minutes." (*Id.*, Count 4, ¶ 4.) Mr. Newton asserts that as a result of the force used by the officers during the arrest, he "received injuries to both wrists which in all probability are permanent in nature." (*Id.*, Count 4, ¶ 5.)

The officers had been called by Walmart employees claiming that Mr. Newton "had stolen merchandise from the Walmart store." (*Id.*, Count 1, ¶ 6.) Plaintiffs assert that the officers "did not investigate the matter, did not speak to [Mr. Newton] to ascertain his version of the events, but simply stormed into the Walmart parking lot and dragged the Plaintiff out of his motor vehicle." (*Id.*, Count 4, ¶ 3.) Mr. Newton asserts that he "vigorously advised the Defendant Officers that he had not committed any criminal offenses, and did not steal anything from the Wal-Mart store." (*Id.*, Count 5, ¶ 2.) He asserts that Officer Santos advised him that "Wal-Mart had security film" of the events. *Id.* Mr. Newton then asked Officer Santos if he had reviewed the film, and, in return, he was told to "shut-up" by Officer Santos because they "don't need any film." (*Id.*, Count 5, ¶ 3.) Plaintiffs assert that they have never been given a copy of the Walmart tape. (*Id.*, Count 5, ¶ 4.)

After Mr. Newton had been placed in the patrol car, Sergeant Wittevrongle and Officer Devlin searched Mr. Newton's vehicle. (*Id.*, Count 2, ¶ 4.) The officers "did not obtain a search warrant, even though Plaintiff had been handcuffed, and secured in a patrol vehicle, and there was no one else present, and there was no threat of the removal, or tampering with Plaintiff's vehicle." (*Id.*) Mr. Newton asserts that he did not give his consent for the search, and that he expressly told the officers that they did not have his consent. (*Id.*, Count 2, ¶¶ 5-6.) As part of the search, the officers "retrieved a pair of black Sony headphones." (*Id.*, Count 2, ¶ 7.) In the search of the vehicle, the officers

3

also "found a black handled silver four inch folding knife, two black IPAD cases, two brand new book bags, a box containing brake pads, and numerous other items, belonging to the Plaintiff and his family for which receipts were present." (*Id.*, Count 3, ¶ 2.) Plaintiffs assert that the officers gave the items to a Walmart store employee "who took the items back into the Walmart store," and Plaintiffs never "saw those items again." (*Id.*, Count 3, ¶ 3.) Plaintiffs further assert that the items "were valued in excess of One Thousand Dollars." (*Id.*)

After the search of Mr. Newton's vehicle in the parking lot, Officers Santos and Devlin transported Mr. Newton to the Union Township Police Headquarters. (*Id.*, Count 6, ¶ 2.) During the ride to the police headquarters, Mr. Newton asserts that Officer Santos "continued his illicit conduct of making derogatory, and willfully false statements to the Plaintiff." (*Id.*) Mr. Newton asserts that the officers activated a dashboard recording device during the trip, but that "Defendants refused to provide the Plaintiff . . . with a copy of the video film" despite "numerous written requests." (*Id.*, Count 6, ¶¶ 3-4.)

Upon arrival at the police station, Mr. Newton was "handcuffed to a wall where [he] was thoroughly searched, and deprived of the shoes he was wearing, and his shirt." (*Id.*, Count 7, ¶ 2.) Plaintiffs claim that Mr. Newton never saw the shirt and shoes again. (*Id.*) Mr. Newton claims that Officer Santos "continued his verbal abuse of the Plaintiff." (*Id.*, Count 7, ¶ 3; *see also id.*, Count 8, ¶ 3.) Mr. Newton claims that Officer Santos then "opened a case containing the Plaintiff's cellular phone, and then turned the phone on," whereupon he "discovered it was in the record position, and had been recording the occurrences that transpired between the Plaintiff, and the Officers since Sergeant

4

Wittevrongle first approached the Plaintiff in the Wal-Mart parking lot." (*Id.*, Count 7, ¶ 4.)   Officer Santos showed the recording to Officer Mascidlo and "then deleted the recording." (*Id.*)

Mr. Newton asserts that "Officer Mascidlo then presented the Plaintiff with a form to sign regarding his personal property, which form stated that the Plaintiff possessed Two Hundred and Sixty One ($261.00) Dollars in cash, and change which was completely inaccurate" as he actually possessed $361.00. (*Id.*, Count 8, ¶ 4.)   Mr. Newton thus claims that the officers took $100 of his money. (*Id.*, Count 8, ¶ 6.)   Ms. Newton witnessed this event. (*Id.*, Count 8, ¶ 5.)   Mr. Newton was then "escorted to a holding cell . . . in his socks." (*Id.*, Count 9, ¶ 2.)

Later that evening, Mr. Newton's son came to the police headquarters "to retrieve personal property belonging to the Plaintiff." (*Id.*, Count 9, ¶ 3.)   Despite Plaintiff having consented to the belongings being released to his son, the police officers refused to release the property. (*Id.*)   Mr. Newton's son tried again to retrieve the property the next day, and was again denied. (*Id.*, Count 9, ¶ 4.)

Mr. Newton claims that he was held in the holding cell from 9 p.m. on the night of August 16, 2013 to the "early morning hours of August 20, 2013." (*Id.*, Count 11, ¶ 2.)   Plaintiffs assert that "it is unlawful under New Jersey State Law to confine a prisoner in a Municipal Lock-up beyond a spatial period of forty-eight (48) hours." (*Id.*)   Mr. Newton further asserts that his holding cell was "filthy and squalid, and was littered with spoiled food, paper food wrappers, paper cups, discarded food and other debris," and that "[t]he water fountain portion of the toilet did not work . . . and it was impossible for the Plaintiff to drink water." (*Id.*, Count 11, ¶ 3.)   He further asserts that he was deprived of

essential medical treatment" even though he advised people of "medical anomalies" and requested "treatment of his back, legs, and wrist." (*Id.*, Count 11, ¶ 4.) He claims that instead of receiving treatment, that he was informed by a female unknown officer that "if treatment was sought [by Mr. Newton] it would delay the Plaintiff's being transported to the Union County Jail." (*Id.*, Count 11, ¶ 5.) Mr. Newton claims that he was in "severe pain" during this time. (*Id.*, Count 11, ¶ 6.)

Andrea Newton

While Mr. Newton was in the parking lot, Ms. Newton "was standing in the 'check-out line' waiting for a cashier to purchase various items [when] she was approached by an individual believed to be Wal-Mart employee Dwayne Mays, and Defendant Police Officer Devlin and another officer." (*Id.*, Count 12, ¶ 3.) "[Ms. Newton] was escorted to a security or loss prevention office in the Wal-Mart store" and was searched, even though Ms. Newton "only possessed the items she was standing in line waiting to pay for." (*Id.*) Later, the Officers filed a report—which Ms. Newton asserts was false—stating that she "possessed four blouses in a berka." (*Id.*, Count 12, ¶ 4.) Ms. Newton asserts that she was recording the events on an "Olympus device," and that the officers "stole, seized, and otherwise took Plaintiff's recording device, stopped the recording, and deleted same." (*Id.*, Count 13, ¶ 2.)

Ms. Newton was arrested and "detained in the Township's Jail for a spatial period in excess of sixty-six hours," from approximately 9:30pm on August 16, 2013 to approximately 2:00pm on August 19, 2013. (*Id.*, Count 12, ¶ 6; *id.*, Count 14, ¶ 2.) Ms. Newton asserts that her cell was "extremely dirty, and the sink, and toilet faculties were substandard and inoperable." (*Id.*, Count 14, ¶ 3.) She states that she "was unable to

drink water" and "was not fed in an adequate manner." (*Id.*)   She further asserts that she "possessed 'life-threatening' medical anomalies" and requested but "was denied essential medical treatments, and medications by Defendants while in their care, and custody." (*Id.*, Count 14, ¶ 4.)

Both Plaintiffs

On or about August 16, 2013, Officer Gaetano D'Alessandro signed criminal complaints against Mr. and Ms. Newton "claiming [that] Plaintiffs had stolen merchandise from the Walmart store." (*Id.*, Count 10, ¶ 2.)  Plaintiffs allege that Officer Alessandro "did not witness the Plaintiffs committing any theft, or shoplifting," he did not "review any video film demonstrating that Plaintiffs had committed the criminal offense of shoplifting," and "Plaintiffs did not admit to committing an offense of shoplifting." (*Id.*, Count 10, ¶ 3.)  Plaintiffs assert that the "Walmart Store did not file any complaint against Plaintiffs regarding the allegations of shoplifting, which was the 'pre-text' for the Defendant Police Department's involvement in the first instance." (*Id.*, Count 19, ¶ 4.)  Therefore, Plaintiffs assert that the "complaints were false, and were a result of 'rascism, and deliberate lies' which constituted intentional perjury." (*Id.*, Count 10, ¶ 4.)  Aside from other harms, Plaintiffs allege this "conduct also compelled [them] to appear before . . . [courts] on nine (9) separate occasions." (*Id.*, Count 10, ¶ 6.)[2]

Plaintiffs assert that Defendants "requested [that] Plaintiff's pending criminal case be transferred to, and otherwise adjudicated in the Superior Court Law Division, of Union County." (*Id.*, Count 15, ¶ 2.)  Plaintiffs assert that the transfer was improper

---

[2] In Count 20, Plaintiffs allege that they were compelled to appear on twelve occasions.  In either case, Plaintiffs allege that the charges required them to appear numerous times in court over a period of a year.

because the allegations of shoplifting "could not be prosecuted in the Law Division." (*Id.*, Count 15, ¶ 3.) They assert that the transfer was a "means of racism" and "abuse of power." (*Id.*) Plaintiffs assert that, because of the Defendants' false reports and abuse of process, they were charged "a bail of $7,500.00, cash or bond only, with no ten percent cash option" when "the most the bail should have been was . . . $2,500.00." (*Id.*, Count 16, ¶ 3.) Plaintiffs further assert that as a result of the false arrest they "were fingerprinted, and photographed," "which has been made a permanent part of their record." (*Id.*, Count 19, ¶ 3.) "Within the period of August 2013 – October 2014, Plaintiffs were compelled to appear before the Superior Court Law Division, of Union County, and the Municipal Court of Union on twelve separate occasions." (*Id.*, Count 20, ¶ 3.)

The "charges of possession of a knife, resisting arrest, obstructing justice, and shoplifting were dismissed against Plaintiff Mark Newton." (*Id.*, Count 20, ¶ 5.) Mr. Newton was convicted, however, of a disorderly conduct offense. (*See* Defs.' Mot., Ex. B (Certified Abstract of Conviction).)[3] The "charges of shoplifting and giving false information to law enforcement authorities were dismissed against Plaintiff Andrea Newton." (Compl., Count 20, ¶ 6.) Ms. Newton was convicted, however, of disorderly conduct. (*See* Defs.' Mot., Ex. C (Certified Abstract of Conviction).)

Between September 2013 and June 2014, Mr. Newton contacted the "'Internal Affairs Division' of Defendant Union Police Department" to complain about the events, but the "Defendants took no action." (Compl., Count 17, ¶¶ 2-3.) Plaintiffs allege that

---

[3] *See Sands v. McCormick*, 502 F.3d 263 (3d. Cir. 2007) ("Generally, in ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits, and matters of public record.").

"[w]ithin the period of October 2013-June 2014, Plaintiffs served Defendants with several notices seeking both the preservation and the release to Plaintiffs of the video recordings made by the Defendant Police Officers in both the patrol vehicle . . . and the video that was 'supposedly made' in the processing area of the Defendant Police Headquarters regarding the processing of Plaintiffs." (*Id.*, Count 21, ¶ 2.)  Plaintiffs further allege that they served a "valid subpoena" on Defendants in March 2014 to "compel production of the video recordings which was simply ignored." (*Id.*, Count 18, ¶ 3.)  Plaintiffs assert that all of Defendants' actions were "accomplished pursuant to overt acts of 'racism' and 'prejudice.'" (*Id.*, Count 18, ¶ 2.)

Claims

The acts which Plaintiffs assert were unlawful were: "the false arrest of Plaintiffs," "the unlawful and exaggerated detainment of the Plaintiffs in the Union Township lockup" including being held longer than 48 hours in the Union County cells, the "search of the Plaintiff, Mark Newton's motor vehicle," the "theft of numerous personal items belonging to the Plaintiffs," the "theft" and erasure of the recording devices of both Mr. and Ms. Newton, the confinement in "jail cells that were devoid of water, riddled with filth, and other debris," the refusal to provide "essential medical treatment," and the submission of allegedly false reports. (*Id.*, Count 18, ¶¶ 3-8.) Plaintiffs bring 21 claims based on these allegations.

The Court construes Plaintiffs' claims as follows:  Count 1 (excessive force); Count 2 (unreasonable search of Mr. Newton's car); Count 3 (deprivation of property without due process of law); Count 4 (excessive force); Count 5 (false arrest and/or malicious prosecution); Count 6 (fraudulent concealment of evidence); Count 7

(deprivation of property without due process of law, verbal abuse, and intentional spoliation of evidence); Count 8 (deprivation of property without due process of law); Count 9 (deprivation of property without due process of law); Count 10 (malicious prosecution); Count 11 (excessive confinement, conditions of confinement, and deliberate indifference to medical needs); Count 12 (false arrest, unlawful search, malicious prosecution, and excessive confinement); Count 13 (theft and intentional spoliation of evidence); Count 14 (excessive confinement, conditions of confinement, and deliberate indifference to medical needs); Count 15 (malicious prosecution and selective prosecution); Count 16 (false arrest, civil conspiracy, and excessive bail/confinement); Count 17 (failure to investigate complaints of improper police behavior); Count 18 (summary of all previous claims); Count 19 (false arrest); Count 20 (false arrest and malicious prosecution); and Count 21 (fraudulent concealment of evidence). Plaintiffs bring all claims against all Defendants.

## II.   LEGAL STANDARD

Under Rule 8(a), for a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining the sufficiency of a complaint, the Third Circuit has outlined a three-step process:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at

663-64).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III.   DISCUSSION

Plaintiffs bring all of their claims as violations of their constitutional rights pursuant to 42 U.S.C. § 1983.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, to establish a valid § 1983 claim, a plaintiff must show (1) that "the conduct complained of was committed by a person acting under color of state law," and (2) that the "conduct deprived the plaintiff of his rights, privileges and immunities secured by the Constitution or laws of the United States."  *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011)

### A.   Union Police Department

Defendants argue that the Union Police Department is not a proper defendant in this case because "for purposes of section 1983 liability, municipalities and its police departments are treated as a 'single entity,'" and, here, Plaintiffs have brought suit against both the Township of Union and the police department.  (Defs.' Mot. at 17 (citing *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997) and N.J.S.A. 40A:14-118)); *see also Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d. Cir. 2004) ("In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local

11

municipality, and is not a separate judicial entity."). The Court agrees with Defendants, and dismisses the claims against the Union Police Department with prejudice.

**B.      Excessive Force**

Plaintiffs bring excessive force claims against all Defendants. Defendants argue that these claims should be dismissed because the officers involved in the arrest are entitled to qualified immunity and Plaintiffs have not pled facts supporting liability for any of the other Defendants.

Defendants argue that "Count Four alleges that Sergeant Wittevrongle placed handcuffs on the Plaintiff in an intentionally harsh manner," and "[n]o other officer is alleged to have placed the handcuffs on the Plaintiff." (Defs.' Mot. at 15.) Defendants state that "Plaintiff does not dispute the reasonableness of handcuffing in connection with his arrest, rather he claims that the force used in effectuating his arrest was unreasonable and excessive." (*Id.*) Defendants assert that "[c]learly, the officer's conduct was reasonable, and thus he is entitled to qualified immunity." (*Id.* at 17.)

With respect to the defendants other than Sergeant Wittevrongle, Defendants argue that "[t]o the extent Count Four is against all named defendants, no liability can flow to them if this court accepts defendant's argument that Sergeant Wittevrongle did not violate plaintiff s constitutional rights in handcuffing him, there is no vicarious liability against the township or other officers." (*Id.*) They further argue that "a municipality cannot be held liable in a civil rights action under a theory of respondent superior for an injury inflicted solely by an employee or agent." (*Id.* (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978)).)

12

Contrary to Defendants' summary of the allegations, Plaintiffs allege that Mr. Newton was reading in his vehicle when Sergeant Wittevrongle "suddenly appeared out of nowhere in the Walmart parking lot, and stopped his police cruiser a short distance in front of the vehicle operated by [him]." (Compl., Count 1, ¶ 2.) Plaintiffs allege that Sergeant Wittevrongle yelled for Mr. Newton to exit his vehicle, whereupon "in the absence of any reason whatsoever, the Sergeant forcibly grabbed the Plaintiff's arm, and began twisting it." (*Id.*, Count 1, ¶ 3.) Plaintiffs then allege that Officers Santos and Devlin "grabb[ed] the Plaintiff with great force throwing the Plaintiff against his motor vehicle," and "Officer Devlin leaned on Plaintiff's legs, while Officer Santos pressed heavily on the Plaintiff's back, where Sergeant Wittevrongle handcuffed [him], and immediately placed him in the rear of the patrol car." (*Id.*, Count 1, ¶¶ 3-4.) Plaintiffs assert that the officers "deliberately placed handcuffs on the Plaintiff in an intentionally harsh manner, and Plaintiff was compelled to sit on his hands, and wrists while seated in Defendants' patrol vehicle for over forty-five minutes." (*Id.*, Count 4, ¶ 4.) Mr. Newton claims that he was in "severe pain." (*Id.*, Count 11, ¶ 6.) Mr. Newton further asserts that, as a result of the force used by the officers during the arrest, he "received injuries to both wrists which in all probability are permanent in nature." (*Id.*, Count 4, ¶ 5.)

The defense of qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The doctrine "balances the interest in allowing public officials to perform their discretionary functions without fear of suit against the public's interest in vindicating important federal rights." *Ryan v. Burlington County, N.J.*, 889 F.2d 1286, 1292 (3d Cir. 1989) (citing *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).

13

In *Saucier v. Katz*, the Supreme Court established a framework for determining whether an officer is entitled to the qualified immunity defense. *See* 533 U.S. 194 (2001). First, a court should ask whether "the officer's conduct violated a constitutional right." *Id.* at 201. In an excessive force case, "[t]he relevant inquiry is 'the reasonableness of the officer's belief as to the appropriate level of force,' which 'should be judged from [the officer's] on-scene perspective,' and not in the '20/20 vision of hindsight.'" *Curley v. Klem*, 499 F.3d 199, 206-07 (3d Cir. 2007) (quoting *Saucier*, 533 U.S. at 205)). Second, a court should consider "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Id.* (quoting *Saucier*, 533 U.S. at 202).

"Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," evaluating the objective reasonableness of police conduct "requires careful attention to the facts and circumstances of each particular case including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). Further, a court may consider "the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004). If an officer could have reasonably believed that his

actions were lawful given the circumstances, the officer will be entitled to qualified immunity. *See Ryan*, 889 F.2d at 1292.

However, reasonableness under the Fourth Amendment "should frequently remain a question for the jury." *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999). But, it is "the court, not a jury, [that] should decide whether there is immunity in any given case." *Curley*, 499 F.3d at 210. Thus, it is the jury that "determines *disputed* historical facts material to the qualified immunity question." *Carswell v. Borough of Homestead*, 381 F.3d 235 (3d Cir. 2004) (emphasis added); *see also Santini v. Fuentes*, 795 F.3d 410, at 419-20 (3d Cir. 2015) (holding that material issues of fact surrounding the applicability of qualified immunity precluded the granting of summary judgment).

Assuming the facts of Plaintiffs' Complaint to be true, as this Court must, the Court finds that Plaintiffs have sufficiently pled a claim for excessive force against Sergeant Wittevrongle and Officers Santos and Devlin. Defendants do not contest that a seizure occurred, but they do contest whether the handcuffing and handling of Mr. Newton while he was handcuffed was unreasonable and/or unnecessary under the circumstances. Accepting the facts pled to be true, Mr. Newton was being investigated for shoplifting, and he did not appear to pose an immediate threat to the safety of the officers or others.  (Compl., Count 1, ¶¶ 2-3, 6; *id.*, Count 4, ¶ 3; *id.*, Count 5, ¶ 2.).  He exited the vehicle and for no reason at all he was forcibly grabbed and handcuffed in an excessively harmful manner, and he was made to stay in that position for over forty-five minutes (which allegedly caused injury).  (*Id.*, Count 1, ¶¶ 3-4; *id.*, Count 4, ¶¶ 4-5.).  In assessing all of the relevant factors based on the allegations in the complaint, the Court finds that Plaintiffs' have sufficiently alleged a plausible § 1983 claim of excessive force

against Sergeant Wittevrongle and Officers Santos and Devlin.  Therefore, dismissal of the excessive force claims against these defendants is denied.

To the extent that Plaintiffs' claims are based on verbal versus excessive physical force (*see id.*, Count 6, ¶ 2; *id.*, Count 7 ¶ 3; *id.*, Count 8, ¶ 3), such claims are "not actionable under § 1983" and are dismissed.  *Todd v. Walters*, 166 F. App'x 590, 593 (3d Cir. 2006).   Additionally, to the extent that Plaintiffs seek to expand liability to Defendants other than Sergeant Wittevrongle and Officers Santos and Devlin, Plaintiffs have alleged no facts sufficient to state a claim against the other uninvolved Defendants. *See Monell*, 436 U.S. at 691; *Santiago v. Warminster Tp.*, 629 F.3d 121, 128-30 (3d Cir. 2010); *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996).  Therefore, the claims of excessive force against defendants other than Sergeant Wittevrongle and Officers Santos and Devlin are dismissed without prejudice.

## C.   False Arrest

Plaintiffs allege that they were falsely arrested without probable cause.  (*See* Compl., Counts 5, 12, 16, 18-20.)  Defendants argue that Plaintiffs' convictions for disorderly conduct precludes Plaintiffs' false arrest claims.  (*See* Defs.' Mot. at 7.)  The Court agrees.  To prevail on a claim for false arrest under § 1983, a plaintiff must prove that the officers arrested him without probable cause.   *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d. Cir. 1995).  Although Plaintiffs here were found not guilty of other charges (*see* Compl., Count 20, ¶¶5-6; Defs.' Mot., Exs. B & C), the fact that they were found guilty of at least one of the charges for which they were arrested precludes their false arrest claims. *See Heck v. Humphrey*, 512, U.S. 477, 486-87 (1994); *Menke v. Baker*, No. 10-2586, 2012 WL 2339825, at *8 (D.N.J. June 19, 2012) ("Though

Kevin pleaded guilty only to a violation of a municipal ordinance, an officer may make an arrest where he has probable cause to believe an individual has committed even a very minor offense in his presence.") (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)).   Neither of the Plaintiffs' convictions for disorderly conduct have been overturned.  Therefore, Plaintiffs' false arrest claims are dismissed with prejudice.

### D.      Unlawful and/or Excessive Detention

Defendants argue that, for the same reasons that apply to Plaintiffs' false arrest claims, their unlawful imprisonment claims also must be dismissed. (*See* Defs.' Mot. at 7.) The Court believes that Defendants misconstrue Plaintiffs' claims. Plaintiffs' claims of unlawful imprisonment are not simply based on being falsely imprisoned.  Construing Plaintiffs' *pro se* complaint liberally as the Court must do, Plaintiffs appear to be arguing that their imprisonment was *prolonged* because of the additional charges and a higher bail than should have applied. (*See, e.g.*, Compl., Counts 11, 14, 16.) They argue that this prolonged detention was in violation of New Jersey law and their federal rights. (*Id.*)

To the extent that Plaintiffs base their claim on a violation of New Jersey law, such a claim is not cognizable as a § 1983 violation, *Schneyder*, 653 F.3d at 319, and they have not stated any claim under state law.   However, to the extent that they base their claims on an extended length of detention related to charges for which they were not convicted, such claims could state a federal claim and will not be dismissed at this time. *See Nelson v. Jashurek*, 109 F.3d 142, 145–46 (3d Cir. 1997) (discussing *Heck* and noting that "Nelson charges that Jashurek effectuated a lawful arrest in an unlawful manner. Accordingly, while we do not doubt that even on the facts as presented by Nelson it will be difficult for him to establish liability in this case, we do not see why a

judgment in his favor would throw the validity of his conviction into doubt."); *Larison v. City of Trenton*, 180 F.R.D. 261, 271-72 (D.N.J. 1999) ("Plaintiff seeks to assert a claim that his due process rights were violated by the defendants as the result of his experiencing an unexplained forty (40) hour delay in being taken before a Municipal Court Judge . . . . [P]laintiff shall be given leave to amend his complaint to assert a claim of unreasonable delay before appearing before a Municipal Court Judge."). As Defendants do not address this issue in their motion to dismiss, the excessive detention claims will not be dismissed at this time.

### E.    Malicious Prosecution

For the same reasons that Defendants argued that the false arrest and unlawful imprisonment claims should be dismissed—that Plaintiffs pled guilty to one of the charged offenses, so too do they argue that Plaintiffs' malicious prosecution claims should be dismissed. (*See* Defs.' Mot. at 9.) Defendants argue that "[t]he purpose of the favorable termination requirement is to avoid 'the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.'" (*Id.* at 7-8 (quoting *Heck*, 512 U.S. at 484) (alteration in original).) Thus, Defendants challenge Plaintiffs' malicious prosecution claims on the ground that Plaintiffs' convictions for disorderly conduct demonstrates that the proceeding did not terminate in their favor and that there was probable cause for the proceedings. (*See id.* at 9-10.)

A plaintiff basing a § 1983 claim on an allegedly malicious prosecution must establish:

(1) the defendants initiated a criminal proceeding;
(2) the criminal proceeding ended in the plaintiff's favor;
(3) the proceeding was initiated without probable cause;
(4) the defendants acted maliciously or for purposes other than bringing plaintiff to justice; and
(5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Agarwal v. City of Jersey City*, 388 F. App'x 199, 202 (3d Cir. 2010) (quoting *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009)).  The Third Circuit in *Kossler* (a summary judgment case) addressed the following question relevant to Defendants' arguments:

Whether a conviction for disorderly conduct and a contemporaneous acquittal for aggravated assault and public intoxication under the relevant Pennsylvania statutes constitute a favorable termination of the state criminal proceeding against the plaintiff whose intentional physical contact against a municipal police officer underlies all three offenses.

564 F.3d at 183.  The Court held that "under this particular factual scenario, the plaintiff's criminal proceeding did not end in his favor." *Id.*    The Third Circuit instructed that a court must conduct an "examination of the entire criminal proceeding, [and] the judgment must indicate the plaintiff's innocence of the alleged misconduct *underlying the offenses charged*" in order to find there was a "favorable termination." *Id.* at 188 (emphasis added).  The Court cannot determine, based on Plaintiffs' allegations or the bare conviction sheets submitted by Defendants, what the underlying conduct was related to the offenses for which Plaintiffs were convicted versus those where Plaintiffs were found not guilty, and Defendants have not addressed other arguments related to each offense.  Nor is there any information before the Court regarding the circumstances underlying what appear to be guilty pleas on the disorderly conduct charges. Therefore, at this stage, the Court denies dismissal of Plaintiffs' malicious prosecution claims.

**F.      Selective Prosecution**

Defendants do not specifically address Plaintiffs' claims of selective prosecution based on race. Instead, they generally assert that the allegations do not state a federal claim. "To establish a claim of selective prosecution, [a plaintiff] must demonstrate two factors[:] . . . he must provide evidence that persons similarly situated have not been prosecuted," and "he must show that the decision to prosecute was made on the basis of an unjustifiable standard, such as race, religion, or some other arbitrary factor, or that the prosecution was intended to prevent his exercise of a fundamental right." *U.S. v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989). Here, Plaintiffs make only conclusory allegations that all of Defendants' actions were "accomplished pursuant to overt acts of 'racism' and 'prejudice.'" (Compl., Count 18, ¶ 2.) Such bare allegations are insufficient to meet the Rule 8 pleading requirements. Therefore, Plaintiffs' claims of selective prosecution are dismissed without prejudice.

**G.      Unlawful Search**

Plaintiffs argue that Mr. Newton's vehicle was unlawfully searched by Sergeant Wittevrongle and Officer Devlin without his consent. (*See id.*, Count 2.) Defendants argue that the search was lawful as it was effectuated incident to a lawful arrest. (*See* Defs.' Mot. at 13-14.) As with the unlawful imprisonment and malicious prosecution claims, however, Defendants do not address the specifics of the charges in this case and Plaintiffs' factual allegations compared to the need to conduct the search. Plaintiffs allege that there was no probable cause for an arrest for shoplifting. (*See* Compl., Count 4, ¶ 3; *id.*, Count 5 ¶¶ 2-4; *id.*, Count 12, ¶ 3.) They allege that the police officers indicated that there was a surveillance video from the store, but that the officers did not

20

review it. (*See id.*, Count 5, ¶¶ 2-4.)  Plaintiffs further alleged that they either had receipts for the items in question or were waiting in line to purchase them. (*See id.*, Count 3, ¶ 2; *id.*, Count 12, ¶ 3.)  Defendants have not addressed the specifics of the various charges and the facts as alleged by Plaintiffs, relying instead on the fact that Mr. Newton was convicted of one of the charges and, thus, there was a lawful arrest on that charge. Without addressing each charge and the underlying conduct of the different charges (which goes beyond Plaintiffs' pleadings for purposes of a motion to dismiss), it is unclear at this stage if the automobile exception applies.  There may have been probable cause to arrest Mr. Newton for disorderly conduct as his guilty plea indicates, but that does not explain why a search of his vehicle incident to that arrest was proper on the facts as alleged by Plaintiffs—where Plaintiffs allege there was no threat of danger and it is not evident how evidence of a disorderly conduct charge could be expected to be obtained in his vehicle. *See Knowles v. Iowa*, 525 U.S. 113, 118-19 (1998) ("Here we are asked to extend that 'bright-line rule' to a situation where the concern for officer safety is not present to the same extent and the concern for destruction or loss of evidence is not present at all. We decline to do so.").  Defendants may contest Plaintiffs facts or ultimately be able to establish that probable cause existed for other charges and that the automobile exception applies, but that analysis is for a different stage of the litigation. Thus, the Court denies dismissal of the unlawful search claim as against Sergeant Wittevrongle and Officer Devlin.  However, for the same reasons stated with respect to the excessive force claims, the claim of an unlawful search against defendants other than Sergeant Wittevrongle and Officer Devlin are dismissed without prejudice.

**H.     Civil Conspiracy**

Plaintiffs bring a claim for civil conspiracy based on the fact that Mr. Newton was charged with various offenses, which were allegedly false, and also which resulted in a greater bail than should have been required. (*See* Compl. Count 16.) Defendants argue that "[t]o the extent the Plaintiffs allege a conspiracy between the named Defendants, the Municipal Court judges, Township Employees and Police Supervisory Personnel, the 'underlying wrong' would be the false arrest claim." (*See* Defs.' Mot. at 12-13.) As the false arrest claim has been dismissed, Defendants argue the civil conspiracy also must be dismissed. (*See id.*) To the extent that the claim is based on the false arrest claim, the Court agrees. *See Morgan v. Union Cnty. Bd. of Chosen Freeholders*, 633 A.2d 985, 998 (N.J. App. Div. 1993) ("The gist of the claim is not the unlawful agreement, but the underlying wrong which, absent the conspiracy, would give a right of action.") (internal quotations omitted). However, Plaintiffs civil conspiracy claim is not based solely on the alleged false arrest. Instead, as noted above, Plaintiffs' claim is also based on allegations of a conspiracy to add additional charges, and/or impose harsher bail conditions which unlawfully extended Mr. Newton's period of confinement. Defendants do not address this aspect of Plaintiffs' allegations. While Plaintiffs' allegations may ultimately be insufficient to state a civil conspiracy claim, the Court will not engage in analysis based on arguments not raised by Defendants. Therefore, the Court dismisses the civil conspiracy claim with prejudice to the extent that that underlying wrong is an alleged false arrest, but denies Defendants' motion to the extent that the claim is based on an underlying wrong of unlawful excessive confinement.

## I.      Other Claims

The following claims were made by Plaintiffs but not specifically addressed by Defendants other than in catchall arguments.  A moving party has the burden of making his or her argument on each claim that is being challenged.  It is not sufficient to include catchall arguments, leaving the legal research and analysis as it applies to each claim to the Court.[4]

### 1.      Conditions of Confinement

Plaintiffs bring claims of unlawful conditions of confinement claims.  (*See, e.g.*, Compl., Counts 11, 14.)   Defendants do not specifically address these claims other than in the catchall *Heck* arguments based on the disorderly conduct conviction (which has no bearing on this claim) (*see* Defs.' Mot. at 5), or that the pleading requirements of Rule 8 have not been met (*see id.* at 20.).  Claims attacking pre-trial confinement conditions may state a federal due process claim.  *See Hubbard v. Taylor*, 399 F.3d 150, 157-58 (3d Cir. 2005) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). As noted above, Defendants did not address Plaintiffs' allegations regarding the conditions of their confinement.  Therefore, the Court denies dismissal of Plaintiffs' conditions of confinement claims.

### 2.      Deliberate Indifference to Medical Needs

Plaintiffs raise claims regarding the alleged deliberate indifference to their medical needs by Defendants. (*See, e.g.*, Compl., Counts 11, 14.)  Defendants do not specifically address these allegations other than in the catchall *Heck* arguments based on disorderly conduct conviction (which has no bearing on these claims) (*see* Defs.' Mot. at

---

[4] Defendants' brief is only 21 pages long, so there is no concern that Defendants lacked adequate briefing space to address the claims raised in Plaintiffs' complaint.

5), or generally that the pleading requirements of Rule 8 have not been met (*see id.* at 20). Claims of deliberate indifference to medical needs also may state a federal claim. *See King v. Cnty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). "Deliberate indifference requires more than inadequate medical attention or incomplete medical treatment." *Id.* Instead, a plaintiff must "show that the prison officials knew of a substantial risk of serious harm—which may be inferred if the risk was obvious—and failed to act despite that knowledge." *Id.* Here, Plaintiffs make only the barest allegations regarding their medical needs, and the alleged indifference to those needs. (*See, e.g.*, Compl., Count 14, ¶ 4 (Ms. Newton asserts only that she "possessed 'life-threatening' medical anomalies" and requested but "was denied essential medical treatments, and medications by Defendants while in their care, and custody.").) Such conclusory statements are insufficient to meet the pleading requirements of Rule 8. Therefore, Plaintiffs' claims of deliberate indifference to medical needs will be dismissed without prejudice.

   3.   Theft of Property

Plaintiffs raise various claims regarding alleged theft of their property by officers. (*See, e.g.*, *id.*, Counts 11, 14.) Defendants also do not specifically address these allegations, arguing generally that "[a]ll of these counts refer to a state law claim, that does not involve a federally secured right." (Defs.' Mot. at 11-12.) Contrary to Defendants' assertion, claims of theft of property may give rise to federal claims as a deprivation of property without due process of law. However, "[w]here a state actor deprives an individual of property without authorization, either intentionally or negligently, that deprivation does not result in a violation of the Fourteenth Amendment

so long as a meaningful post deprivation remedy for the loss is available." *Love v. New Jersey Dep't of Corr.*, No. 14-5629, 2015 WL 2226015, at *5 (D.N.J. May 12, 2015) (citing *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984)).  Defendants have not addressed this rule and its application to this case, and the Court declines to do so on their behalf. Therefore, Defendants' motion to dismiss Plaintiffs' claims based on theft of property are denied.

4.   <u>Intentional Spoliation of Evidence, Fraudulent Concealment of Evidence, and Failure to Investigate</u>

Plaintiffs make two different types of allegations related to evidence: (1) they allege that Defendants stole or deleted recordings made by them of the events, and (2) that Defendants failed to turn over recordings by the police officers when requested. (*See, e.g.*, Compl., Counts 6-7, 13, 21.)  Plaintiffs further allege that Defendants failed to investigate their claims of improper police conduct.   (*See id.*, Count 17.)   Again, Defendants simply state that such allegations fail to state a federal claim without any analysis of the specific allegations and claims. (*See* Defs.' Mot. at 11.)   It is not clear at this point whether any of these acts could state a federal (or potentially state) claim (the first conceivably could as a deprivation of property, and Plaintiffs' claim of failure to investigate police conduct could be merely a factual subset of their malicious prosecution claims or a variation of their fraudulent concealment claims).  However, as Defendants did not specifically address these allegations, the Court declines to dismiss them at this time.[5]

---

[5] Plaintiffs' factual allegations on these points are specific, so the issue is not inadequate factual pleading and notice to Defendants.  The issue is whether Plaintiffs have stated a violation of a federal right given that they have not pled claims under state

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is granted in part and denied in part. An appropriate Order accompanies this Opinion.


DATED: February 29, 2016

JOSE L. LINARES
U.S. DISTRICT JUDGE

---

law. However, given liberal construction of *pro se* complaints, the fact that Defendants did not directly address these claims, and the fact that the Court has already found that other claims should proceed, the Court finds no harm in allowing these claims also to proceed at this time.